Case number five for argument this morning is Talley v. Gloede. Mr. Rowe. Good morning and may it please the Court. Isaac Kittle on behalf of the Plaintiff Appellant Randy Talley. The first step in evaluating a pretrial detainee's failure to protect claim is determining whether a reasonable officer in the defendant's position would have put the puzzle pieces together about the risk of harm to the inmate. And an inmate puts a reasonable corrections officer on notice of impending harm by producing a specific complaint identifying the prospective assailant, a credible complaint, and a complaint that identifies an immediate and serious risk of harm. And I think here it's clear that Mr. Talley satisfies those requirements. He makes a specific complaint to Deputy Talley identifying Mr. Wheeler as the prospective assailant, and he identifies specific conduct as well, identifying that Mr. Wheeler had just attempted to assault him without provocation. I think it's a credible complaint because Deputy Gloede hears a commotion coming from the cell block which houses Mr. Talley and Mr. Wheeler. And when he arrives at the cell block, it's confirmed that this commotion is coming from their cell block because these two individuals are continuing to act animated, in his own words, boisterously, yelling over one another, at which point Mr. Talley presents this specific claim that Mr. Wheeler just attempted to assault him. And I think that it's an imminent risk of harm as well, particularly given the layout of the cell block where Mr. Talley is housed at the time. This isn't a situation where they're out in general population and they have plenty of room to roam around. They're in an eight-cell cell block with Talley and Wheeler's cell housed right next to one another, adjacent to one another. And so when Deputy Gloede hears the report from Mr. Wheeler and Mr. Talley about the altercation that just ensued, these two individuals are actually somewhat separated. There's a corridor blocking the two. And Mr. Wheeler is standing in the doorway and he's talking to Deputy Gloede. There's a wall separating them. And then Mr. Talley is talking to Deputy Gloede at the same time through a window. And I think that takes us to the analysis here of objective reasonableness, where these two somewhat separated individuals are now ordered to go back right to the situation where the assault occurred, which I think directly puts Mr. Talley in harm's way, not only because of the opportunity that Mr. Wheeler had to assault him again as he's walking back, but I think that Mr. Wheeler, it was foreseeable that he now had unfettered access to Mr. Talley as he entered his cell. And that's where I think what's the constitutional violation. Go ahead. I'm sorry. When they returned to their cells, Talley walked in front with Wheeler walking behind him. Did they have a choice in the order in which they walked? I don't believe there was a choice in it, and I think it was a simultaneous, an order for them to lock down simultaneously. And that, I think, exactly speaks to the unreasonableness of the order, because I believe there were reasonable measures available to abate the risk of harm, the clearest one being that Deputy Gloede should have ordered them to lock down one at a time, which would have gave Mr. Talley an opportunity to safely get to his cell and then lock down, which I think is a key component of locking down is not just the end result of safely closing your jail cell, but also walking to your jail cell and having the opportunity to close the jail cell before Mr. Wheeler would have an opportunity to then walk back. And I think here, when we're looking at the analysis of objective reasonableness, it just can't be said that when an officer gives an order that puts an inmate directly in harm's way through his order, making it more foreseeable that he would be put in harm's way, that that can be reasonable under the constitutional standard here being the 14th Amendment. He's a pretrial detainee, and so we're working with a less stringent standard here than under the 8th Amendment, which is cruel and unusual punishment, whereas here, he's still subject to the presumption of innocence, and he's subject to a standard that he's not entitled to be punished whatsoever. And so rather than requiring a deliberate indifference analysis here, we're just looking at objective reasonableness, so the specific facts and circumstances available to a reasonable officer in Deputy Gloede's position here. And I think it was clear to a reasonable officer in his position, based on the information available to him with the specific complaint, which I think is credible, and it presents the imminent risk of harm, that there were other reasonable measures he could have taken to abate that risk of harm. If there are no other questions, I'd like to save my time for rebuttal. Certainly, counsel. Mr. Procopio. Good morning, Your Honors. Attorney Greg Procopio on behalf of the appellees Carl Gloede and Dane County, and I'd just first like to say it's an honor arguing for you guys today, for the court today, I'm sorry. And may it please the court. This case ultimately turns on whether Deputy Gloede's decision was reasonable in the moment with all the information he had. I agree with my friend on the other side that the court needs to take into account the entire puzzle, all the pieces. If we look at the undisputed facts, it was certainly reasonable for Deputy Gloede to order both Talley and Wheeler to lock down. First, Deputy Gloede heard general yelling, a commotion coming from the area where Talley and Wheeler were housed, cell block 607. It was only when he approached the cell block that he realized it was coming specifically from 607. And when he approached the cell block, Talley was at one window, Wheeler was separated at another. Deputy Gloede approaches Mr. Talley first and says, what's going on? The only information in the record is... Staying outside the cell block. Remember, we have a video of this. Yes. Right, so he never enters the confines of the unit. He stays outside and talks through the glass window or the vent or whatever it is. Deputy Gloede, yes, absolutely, Your Honor. And the only information related to Deputy Gloede at that time by Talley was, this guy's crazy. He says I stole his minutes. He tried to take a swing at me. That's all. Then Deputy Gloede, trying to gather as much information as possible, goes over to speak to Wheeler. Wheeler is simultaneously accusing Talley of theft. They're accusing each other of two separate things. At the point Deputy Gloede is speaking to Wheeler separately at the window, Talley walks over to him. Talley doesn't go into his cell. Talley doesn't continue to stay separated at the window. He walks directly behind Wheeler. And as Talley testified in his deposition, he's trying to continue to explain the situation. So at this point, Deputy Gloede is confronted with two inmates accusing each other of different things. There is no signs that their verbal dispute had escalated because it hadn't. Wheeler actually never touched Talley. So the assault, my friend says, never actually occurred up to this point. If Wheeler had made contact with Talley Stakes when he first took a swing at Talley, would the perception of the risk posed to Talley by Wheeler be any different? Likely not, Your Honor, because Deputy Gloede would not have witnessed it. However, if there were signs, there was more evidence, say if Wheeler struck Talley and Talley was bleeding. He had a bloody nose or a bloody lip or a bruised eye. And Deputy Gloede and Talley was like, look, I'm bleeding. My nose is broken. Then possibly, but because Gloede never witnessed any of this, I don't think it does, Your Honor. So back to the Talley. So I think the only, just in the interest, I think the only possible constitutional argument is that he should have immediately called for backup. Because our case law is pretty clear that he doesn't have to enter the actual cell block area. Because what if it's a ruse? Yes, absolutely, Your Honor. What if the argument is a ruse? Absolutely. It's a ruse in order to get the deputy to come in. To draw him in and then they beat him. So the only claim here seems to me to be in the circumstances that he confronted, that Mr. Talley would argue, that he had to have immediately called for backup. Because he's not going to go in there alone. Sure. And then the question is, were those circumstances such? And all you have here, you have two people, prisoners argue about all kinds of things. You have two people arguing about access to the iPad or who's got what minutes on the iPad or something, right? Why does that present a circumstance where you think somebody's going to be beaten down in their cell momentarily? It doesn't, Your Honor. Plain and simple. There's nothing in the case law that would require Glady to make an immediate decision. Because, again, it's the totality of the circumstances. Nothing presented in front of Glady would have required him to call immediately for backup. The inmates were already separated and they initially complied with his work. And the content of what the complaint was matters, too. It's not that Mr. Wheeler just tried to stab me with a shank or he just tried to hit me with a chair or something like that. It's that we're arguing about the iPad. Yes. And the alleged swing. The alleged what? Swing. Oh, all right. That's all. Okay. And for the same reasons why Deputy Glady's actions weren't unreasonable under the totality of circumstances are the same reasons why Deputy Glady couldn't have appreciated the risk of harm totality. Can I ask you a very random question just before you sit down, before you go back? Sure. What does a probation hold? Is that where you're in the jail because you may have committed a probation violation and they're trying to get that sorted out? Yes, Your Honor.  And Talley was on a probation hold at the time. All right. If there are no further questions from Your Honors, I yield the reign of my time, and I just ask that this court affirm the district court's ruling. Thank you for your time, Your Honors. Thank you. Counsel, anything further? Nothing further, Your Honor. Pardon? No, nothing further. Okay. The case is taken under advisement.